O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA LaVERTU,<br><br>Plaintiff,<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA AND SPIB INSURANCE AGENCY INC./SUN PACIFIC INSURANCE BROKERS, INC. LONG TERM DISABILITY PLAN,<br><br>Defendants. | CASE NO. SACV 13-00332-JLS (ANx)<br><br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER BENCH TRIAL** |

## I.    INTRODUCTION

This is an action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by Donna LaVertu ("Plaintiff" or "LaVertu") against defendant Unum Life Insurance Company of America ("Defendant" or "Unum"), the plan/claims administrator for defendant

1

SPIB Insurance Agency Inc./Sun Pacific Insurance Brokers, Inc. Plan (the "Plan"). The Plan is an employee welfare benefit plan governed by ERISA.  Plaintiff challenges Unum's termination of her long-term disability ("LTD") benefits. Plaintiff seeks both retroactive benefits as well as the reinstatement of benefits going forward.  Plaintiff also challenges Unum's calculation of monthly benefits.

The parties have submitted the Administrative Record ("AR") and proposed findings of fact and conclusions of law for review.  Plaintiff also submitted supplemental documents that are not part of the Administrative Record.  (*See* Request to Consider Extrinsic Evidence, Doc. 25-1.)  The parties briefed the issue of whether and to what extent the Court should consider this extrinsic evidence. The parties agreed to submit the case to the Court for findings of fact and conclusions of law based on the pleadings, papers, and Administrative Record.  A bench trial was held on March 11, 2014.  For the following reasons, Plaintiff's request to overturn Unum's decision terminating her LTD benefits is GRANTED but her Request to Consider Extrinsic Evidence is DENIED.  Finally, this Court finds that Unum correctly calculated Plaintiff's monthly benefit based on actual, as opposed to potential, earnings.

## II.   FINDINGS OF FACT

The following constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52.[1]

---

1   To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact.  To the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

2

**A.     Plan Provisions**

1.     The Plan provides monthly LTD benefits at 60% of monthly pre-disability earnings, minus applicable offsets, with a maximum of $6,000 per month up to age 65.  *See* AR at 378, 383. [2]

2.     To be eligible for benefits under the Plan, Plaintiff had to be a full-time employee.  *See id.* at 382.

3.     Active employment is a defined term that requires working at least thirty (30) hours per week, being paid regularly, and performing the substantial and material acts of the employee's usual occupation.  *See id.* at 414.

4.     Unum's eligibility analysis determined that Plaintiff was a regular full-time employee.  *See id.* at 12.

5.     The Plan has a section entitled "WHEN ARE YOU TOTALLY DISABLED?" which states:

> For the first 30 months, you are totally disabled when you are rendered unable to perform with reasonable continuity the substantial and material acts necessary to pursue your usual occupation in the usual and customary way.

_____

2   Citations in this format are to the 3800 page Administrative Record/Claim File filed by Plaintiff on February 14, 2014.  (Doc. 29.)

3

> After benefits have been paid for 24 months of disability you are totally disabled when you are:
>
> rendered unable to perform with reasonable continuity the substantial and material acts necessary to pursue your usual occupation in the usual and customary way, and
>
> rendered unable to engage with reasonable continuity in another occupation in which you could reasonably be expected to perform satisfactorily in light of your age, education, training, experience, station in life, physical and mental capacity.

*Id.* at 402.

6.    The Plan defines the term "usual occupation" as "the substantial and material acts you are routinely performing for your Employer when your disability begins."  *Id.* at 418.

7.    The Plan has a section titled "WHEN WILL PAYMENTS STOP?" which states:

> We will stop sending you payments and your claim will end on the earliest of the following:
> - the end of the maximum period of payment,
> - the date you are no longer disabled under the terms of the long term disability plan,
> - when you fail to comply with the Evidence of Continuing Disability section,

4

- the date you fail to submit to any
  reasonable request to be examined by a
  physician of our choice without just cause,
- the date the most recent 3 month average
  of your disability earnings exceed 80% of
  your monthly pre-disability earnings if you
  are partially disabled, [or]
- the date you die.

*Id.* at 407.

8.   The Policy also contains a provision titled "Evidence of
     Continuing Disability" which states, in part, as follows:

> Once Unum approves your claim you will
> be asked to provide evidence of continuing
> disability at reasonable intervals based on
> your condition. Evidence of continuing
> disability means documentation of your
> condition that is sufficient to allow us to
> determine if you are still disabled. . . . If
> you do not submit evidence of continuing
> disability and Unum is unable to obtain the
> necessary documentation from your
> physician or from a reasonably requested
> examination by a physician of our choice,
> your payments will end.

*Id.* at 385.

9.   Unum breaks down an employee's ability to do certain
     physical tasks into the following time categories for an eight-
     hour day: Occasionally (1-33%), Frequently (34-66%), and
     Continuously (67-100%). *See, e.g., id.* at 889.

5

10.   In accordance with this breakdown, Unum recognizes the following definitions:

Occasionally = Activity or condition exists up to 1/3 of the time (0 - 2.5 hours a day in an 8-hour workday)

Frequently = Activity or condition exists from 1/3 to 2/3 of the time (2.5 - 5.5 hours a day in an 8-hour workday)

Constantly = Activity or condition exists 2/3 or more of the time (5.5+ hours a day in an 8-hour workday)

*Id.* at 2303.

11.   Unum's definition of sedentary work "involves sitting most of the time." *Id.* at 3451.

**B.   Plaintiff's Initial Eligibility**

12.   Plaintiff was an administrative assistant for SPIB Insurance Agency Inc. *See id.* at 64.

13.   Plaintiff earned $15 per hour and was scheduled to work forty hours per week. *See id.* at 70, 71.

14.   Plaintiff has a tenth grade education. *See id.* at 1059.

15.   Plaintiff's job required her to sit at a computer all day and perform her assigned work. *See id.* at 64, 2301.

16.   This is a sedentary occupation. *See id.* at 1422.

17.   According to Unum, a sedentary occupation requires sitting at least six out of eight hours a day. *See id.* at 2407, 2431, 3345.

18.   On April 15, 2008, Unum sent Plaintiff a letter informing her that it had approved her LTD benefits claim based upon her

6

inability to work as of August 7, 2007, due to back pain. *See id.* at 513, 3497.

19.     Following a six-month elimination period, Plaintiff's LTD benefits began on February 8, 2008. Thereafter, Plaintiff was paid LTD benefits for over twenty-four months. *See id.* at 513, 3497

20.     Unum terminated Plaintiff's benefits stating: "Long Term Disability benefit payments have not been approved beyond March 21, 2012, because you no longer meet the contractual definition of disability in accordance with your employer's plan." *Id.* at 3497.

21.     Unum upheld the termination of Plaintiff's benefits on appeal, stating: "Based on our review, the information in [Plaintiff's] claim file supports that she is able to perform the duties of her regular occupation." *Id.* at 3751.

**C.     Plaintiff's Back Problems and Surgeries**

22.     In early 2007, Plaintiff was having pain in her buttocks, hip, and posterior thigh so she sought medical treatment. *See id.* at 188, 226.

23.     A series of MRIs demonstrated progressive spinal impairment. *See id.* at 226, 243.

24.     After conservative treatment measures failed, Plaintiff was advised to undergo an extensive lumbar laminectomy and disc resection. *See id.* at 227

7

25.   The surgery was performed on August 7, 2007, by Dr. Mark
Anderson.  *See id.* at 68, 188, 223.

26.   Dr. Anderson's primary diagnosis that kept Plaintiff from
working was "lumbar herniated disc." *Id.* at 67.

27.   Because the procedure was thought to have been successful,
Dr. Anderson advised Plaintiff to return to work on a part-time
basis. *See id.* at 207.

28.   Plaintiff followed his direction and returned to work twenty
hours per week from November 26, 2007 to December 18,
2007. *See id.* at 188.

29.   Initially, Plaintiff reported that although she should have been
feeling better, her pain was getting worse and worse. *See id.*
at 106.

30.   Plaintiff sought the opinion of another doctor who advised her
that she needed a spinal fusion. *See id.* at 189.

31.   Plaintiff stopped working until the second surgery could be
performed in May of 2008. *See id.* at 87.

32.   Between the first and second surgeries, Plaintiff began
treatment with an interventional pain management specialist,
Dr. Scott Martin. *See id.* at 707-708.

33.   Plaintiff also sought a third neurosurgical opinion from Dr.
Sylvain Palmer. *See id.* at 610-613.

34.   On April 22, 2008, Dr. Palmer performed the second spine
surgery. This included a lumbar discectomy, lumbar fusion,
and prodisc implantation. *See id.* at 629.

35.   Following the second surgery, Unum reviewed Plaintiff's medical records to determine if she was subject to the Plan's pre-existing condition exclusion.  *See id.* at 364.

36.   With the evaluation pending, Unum approved disability benefits under a reservation of rights in a letter dated April 15, 2008.  *See id.* at 513-516.

37.   Unum recommended Plaintiff apply for Social Security Disability Insurance benefits.  *See id.* at 515.

38.   On May 7, 2008, Unum removed the reservation of rights from the approval of benefits.  Unum stated "we determined you did not have a pre-existing [sic] for your claim of back pain."  *Id.* at 546.

39.   Because Unum's approval of Plaintiff's claim was within thirty months of her date of disability, Unum evaluated whether Plaintiff was unable to perform with reasonable continuity the substantial and material acts necessary to pursue Plaintiff's usual occupation in the usual and customary way. *See id.* at 402.

40.   After the second surgery, it was determined that there was a bone fragment in Plaintiff's spine which may have broken off during the prior surgery.  *See id.* at 634.

41.   Plaintiff elected to have exploratory surgery to remove the fragment and decompress nerve roots.  *See id.*

42. Dr. Palmer performed the third surgery on June 17, 2008. The bone fragment was excised and a laminotomy was performed. *See id.* at 637.

43. There is no objective evidence that Plaintiff's condition improved following the third surgery on her spine.

**D.    Medical Records and Other Evidence of Disability**

44. On September 14, 2007, approximately one month after Plaintiff's first surgery, Dr. Anderson completed an Attending Physician's Statement ("APS") in which he wrote: "TTD [temporarily totally disabled] until next office visit 9/26/07" *Id.* at 67-68. Dr. Anderson did not submit any other APS.

45. On July 30, 2008, Unum obtained records from Dr. Palmer's office. *See id.* at 608.

46. Dr. Palmer's records included an orthopedic consultation performed by orthopedic surgeon Dr. J. Pierce Conaty on July 18, 2008, one month after the third surgery. Dr. Conaty's consultation was performed on behalf of the Social Security Administration. *See id.* at 659-663.

47. Dr. Conaty's report did not refer to the third surgery and incorrectly reported that Plaintiff was three months post-operative. *See id.* at 659.

48. Dr. Conaty reported that Plaintiff continued to experience significant pain, she was taking pain medication three to four times a day, she had some numbness in her right leg, and she could only stand for five minutes at a time. *See id.*

10

49. Dr. Conaty reported that Plaintiff used a cane and walker around the house. *See id.*

50. Dr. Conaty concluded that Plaintiff had the following limitations:

> Lifting and carrying would be 10 pounds occasionally and less than 10 pounds frequently; standing and walking for up to 2 hours in an 8-hour workday; and sitting for 6 hours in an 8-hour workday. Climbing, stooping, kneeling, and crouching would be eliminated from any workplace activities.

*Id.* at 662-663.

51. Dr. Conaty further opined that with successful fusion and disc replacement surgery within the next six months, these significant functional limitations would probably lessen. Dr. Conaty suggested that an assessment be done at that time. *See id.*

52. On November 5, 2008, Unum called Plaintiff. During the conversation Plaintiff "said she will have pain the rest of her life, but her pain has improved from her back surgery since she had her second [sic] surgery in 6/2008." *Id.* at 685.

53. Unum reported this conversation as follows:

> "Clmt said for anbout [sic] a month and a half from 4-6/08, she would [sic] go to Er 2 times a week in severe pain and would need to get ashot [sic] to relieve the pain. Cllmt [sic] said dr has tried her on

oxycontin [sic] and methadone but now she is on percoset, [sic] 2 times a day down from 3-4 times a day.  Clmt said she is walking as much as she can and still sometimes uses a cane, but has trouble sitting, and bending and stooping and kneeling and when she does bend she does it from the knees and does it very slowly. Clmt said she can do her ADLs very slowly and the process in the morning of getting dressed and shwering [sic] and doing her adls [sic] takes about 3 hours. Clmt said she doesn't do housework, her family does that, she said she can drive short distances, getting in and out of car is painful ,and [sic] she still has alot [sic] of rt foot pain, , [sic] and she has swelling in rt foot and legand [sic] has to elevate her legs. clmt [sic] said she fell twice after her last surgery. Clmt said she is in enrolled [sic] aquatic therapy class but doesn't go very often ebven [sic] though she kknow [sic] she should be going."

  *Id.*

54. During this conversation, Plaintiff informed Unum that "she doesn't think she can [return to work] at this time because of the pain she is in and also can't sit for very long." *Id.*

55. On December 3, 2008, Plaintiff informed Unum that she had been awarded Social Security Disability Insurance Benefits. *See id.* at 717.

12

56.   On February 10, 2009, Unum called Plaintiff to explain the change in the applicable definition of disability.  Unum stated that it would continue to monitor Plaintiff's capacity to do her own occupation but would also start an "any occupation" determination.  *See id.* at 801.

57.   On March 12, 2009, images of Plaintiff's spine showed stable surgical changes of the lower lumbar spine without hardware failure, mild degenerative changes of the lumbar spine, and a small left renal calculus.  *See id.* at 956.

58.   On April 23, 2009, Plaintiff signed a Social Security Authorization form allowing Unum to obtain a copy of her Social Security Administration Disability Insurance file.  *See id.* at 921.

59.   On June 1, 2009, Unum received the Social Security file which contained medical records and reviews of those records.  *See id.* at 1047.

60.   The Social Security file included a Physical Residual Functional Capacity Assessment ("RFC") prepared by the SSA on July 21, 2008.  *See id.* at 1374-1378.

61.   The RFC reported the following limitations: Plaintiff could occasionally lift and/or carry less than ten pounds, frequently lift and/or carry less than ten pounds, stand and/or walk (with normal breaks) for less than two hours in an eight-hour workday, and sit (with normal breaks) for about six hours in an eight-hour workday.  *See id.* at 1375.

13

62. On July 21, 2008, Dr. Pamela Ombres, the SSA's medical consultant who oversaw the RFC, expressed the opinion that she agreed with the "RFC as stated."  *Id.* at 1378.

63. On August 11, 2008, the SSA received a fax from Dr. Palmer's office containing additional medical records.  *See id.* at 1296-1345.

64. The additional medical records documented Plaintiff's third spine surgery.  *See id.* at 1321-1328.

65. On August 13, 2008, Dr. Ombres reviewed the file again, this time considering the fact that Plaintiff had undergone three spine surgeries, not two.  After reviewing the new records, Dr. Ombres stated "claimant is less than sedentary from her first surgery 8/07." *See id.* at 1378.

66. The SSA approved Plaintiff's claim for disability benefits, concluding that she had less than sedentary work capacity. *See id.* at 1422.

67. On March 18, 2009, Unum received an APS completed by Dr. Palmer, who had recently treated Plaintiff.  *See id.* at 888-889.

68. In the APS, Dr. Palmer verified that Plaintiff continued to have lumbar degenerative disc disease, lumbar radiculopathy, and pain in her back, bilateral hip, and right leg. *See id.* at 888.

69. Dr. Palmer elected not to complete the Functional Capacity section of the form, stating that "Pt. would need a functional capacity eval by a physical therapist." *Id.* at 889.

14

70.   On April 23, 2009, Unum performed its first field interview, spending about an hour in Plaintiff's home asking her questions. *See id.* at 924.

71.   Plaintiff described her pain as constant. On average, the pain was a four. The pain would rise to levels five or six, and occasionally nine, several times each week. *See id.* at 927-928.

72.   After obtaining updated medical records, the Social Security file, and performing a field interview, Unum performed a medical review to determine if Plaintiff's restrictions and limitations of less than sedentary work capacity were supported and permanent. *See id.* at 1423.

73.   Unum's review of Plaintiff's Social Security file took place on June 19, 2009, more than one year after her last surgery. *See id.* at 1422-1425.

74.   After reviewing Plaintiff's restrictions and limitations (R&Ls), Unum determined that: "Although the Social Security Administration states that the claimant could sit approximately 6 hours in an 8-hour day, it is highly likely that she would not be able to sit for 6 hours, even with periodic breaks." *Id.* at 1424.

75.   Unum further concluded that: "It is much more probable that the claimant would only be able to perform approximately 4 hours of sitting in an 8 hour day provided she had the opportunity to be positioned for comfort. Her lifting

15

restrictions of less than 10 pounds are reasonable and supported on a permanent basis." *Id.*

76.     Unum then sought review by a vocational rehabilitation consultant, John P. Clancy, to determine if Plaintiff had less than sedentary capacity. *See id.* at 1437-1439.

77.     After reviewing the RFC, Clancy opined that:

> It is my professional opinion that the medically supported R&L's do not allow for sedentary capacity, with only 4 hours of sitting capacity this capacity would not allow for capacity for sedentary work. Furthermore, with the limitations of lifting less than 10 pounds and less than 2 hours of stand and walk makes it even clearer that the claimant would not have sufficient capacity to sustain sedentary work with reasonable continuity. Therefore, I would support the SSDI decision that the claimant has less than sedentary capacity.
>
> *Id.* at 1439.

78.     Based on this review, Unum internally noted that: "Clmt is [totally disabled] any occ and R&Ls are permanent." *Id.* at 1478.

79.     In a letter dated September 10, 2009, Unum informed Plaintiff that: "Based on the facts of your claim, as well as our clinical review, we do not anticipate a change in your medical status and therefore, have made the decision to extend our approval of your benefits through February 20, 2030." *Id.* at 1471.

16

80.   Plaintiff continued to undergo medical treatment for her back condition which included visits to the emergency room, pain management, and treatment for depression.  *See id.* at 1668-1751, 1781-1813, 1867-1894, 1914-1917.

81.   The Court has reviewed the evidence in the record and finds that Plaintiff's medical status remained essentially unchanged. In fact, objective MRI evidence actually shows some deterioration in Plaintiff's condition.

**E.     Allegations of Fraud**

82.   On October 15, 2010, Unum received a fraud tip from a person identifying herself as "Cheryl."  *Id.* at 1498, 1501.

83.   Cheryl told Unum that Plaintiff hosted parties, danced, and carried beverage coolers, all of which was uncorroborated. *See id.* at 1501.

84.   Cheryl's telephone call sparked an extensive investigation by Unum.  *See id.* at 1502, 1504.

85.   On January 19, 2011, Unum called Plaintiff who confirmed that she continued to use a cane and had flare ups in back pain that radiated down her legs.  *See id.* at 1514-1515.

86.   On March 4, 2011, Unum called Plaintiff again.  During the call, Plaintiff again confirmed that her condition had not changed.  Plaintiff reported that she saw a pain doctor every month and was seeing a new psychiatrist, a psychologist, and a general practitioner.  *See id.* at 1634.

17

87.   Plaintiff reported that t she had to hire someone to come in to
      clean her floors and vacuum.  She was unable to do the sports
      in which she previously participated.  She could drive for
      about an hour before she had to stop.  *See id.*

88.   Unum sent a field interviewer to Plaintiff's home on August
      22, 2011, for an unannounced visit.  *See id.* at 1996-1999.

89.   Plaintiff was at home and cooperative.  The field interviewer
      observed that Plaintiff's yard did not appear to be maintained.
      The home was cluttered and messy.  *See id.* at 1997-1998.

90.   Because Unum's interviewer was pressed for time, another
      visit to Plaintiff's home was scheduled for September 8, 2011.
      *See id.* at 1997.

91.   In the interim, Plaintiff underwent further imaging of her
      spine. The results showed that her post-operative results were
      "unchanged." *Id.* at 2492.  A detailed CT scan showed stable
      surgical changes with narrowing at L5-S1 and degenerative
      changes at L4-L5.  *See id.* at 2494-2495.

92.   Unum's report from the third in home interview was
      consistent with Plaintiff's unchanged condition. *See id.* at
      2018.

93.   Unum observed that Plaintiff used a cane to ambulate, stand,
      and for support when getting up and sitting down.  Unum
      further observed that Plaintiff shifted her seated position after
      being seated for about twenty minutes - and continued to shift
      her position for the rest of the meeting about every five to ten

18

1  minutes.  In addition, Plaintiff made facial grimaces when

2  shifting her position, getting up, walking, and sitting down.

3  *See id.* at 2019, 2022.

4  94.  Plaintiff described her back pain as a constant stabbing pain

5  that primarily affected her lower back at an average pain level

6  of seven out of ten.  This pain increased with any prolonged

7  sitting, standing, or walking.  *See id.* at 2023.

8  95.  On November 11, 2011, Unum's special investigation (fraud)

9  unit closed its file on Plaintiff.  *See id.* at 2351.

10  **F.   More Medical Records**

11  96.  On September 15, 2011, Dr. Palmer completed another APS

12  form.  *See id.* at 2207-2209.

13  97.  Dr. Palmer confirmed that a CT scan showed lumbar

14  degenerative disc disease and physical examination revealed

15  Plaintiff's difficulty walking and sitting.  *See id.*

16  98.  Again, Dr. Palmer did not complete the Functional Capacity

17  section, repeating his previous statement that "Pt. would need

18  a functional capacity eval. by a physical therapist."  *Id.* at

19  2208.

20  99.  An MRI taken on October 3, 2011, confirmed that Plaintiff's

21  degenerative lumbar disease remained essentially unchanged.

22  A few additional degenerative changes were observed at T10-

23  T11 and L5-S1.  *See id.* at 2198.

24

25

26                                  19

27

28

100.  On January 9, 2012, Unum performed a paper only medical review of Plaintiff's file.  The review was completed by Dr. Robert J. Clinton.  *See id.* at 2394-2399.

101.  Dr. Clinton is a specialist in internal medicine doctor who works in-house for Unum.  *See id.* at 2394.

102.  Dr. Clinton offered the following:

> My opinion is that the insured is not reasonably restricted from performing activities of exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects, including the human body on a full-time basis, sitting frequently with position changes as needed for comfort, standing and walking occasionally and full use of hands on a full-time or part-time basis.  My reasoning is that the insured's back pain has been stable; she can walk community distances, drive, get in and out of her car without assistance and her recent evaluation by Dr. Palmer does not support that the insured has new or acute findings on examination or imaging.  She has been on stable pain medication regimen without any alteration in her regimen.

*Id.* at 2398.

103.  Dr. Clinton recommended that an independent medical assessment, rather than a functional capacity evaluation, be done.  *See id.*

20

104. At Unum's behest, Dr. Kamran Hakimian performed an independent medical examination on February 28, 2012. *See id.* at 3387-3414.

105. Dr. Hakimian noted that Plaintiff's lumbar spine was tender during his examination of Plaintiff's body. *See id.* at 3391-3392.

106. Dr. Hakimian noted that although Plaintiff had difficulty squatting, she climbed ten stairs with the use of a hand rail and moved a cart with ten pounds in it. *See id.* at 3412.

107. Dr. Hakimian concluded that Plaintiff was able to work a sedentary job on a part-time basis, provided she was allowed a ten minute break every hour. *See id.* at 3413.

108. Dr. Hakimian projected that Plaintiff would be able to work a forty-hour work week within six months. *See id.* at 3412.

109. In response to the question "at what point in time do you feel that there will be a significant change in functional ability," Dr. Hakimian responded "reevaluation in 2 yrs." *Id.* at 3386.

110. On March 2, 2012, Unum wrote to Dr. Hakimian and told him that his six-month timeline for a return to full-time work was "vocationally problematic." *Id.* at 3451-3452.

111. Unum asked for clarification. Specifically, Unum asked Dr. Hakimian if Plaintiff would be able to work full-time if she performed a four- to-six week work hardening program or a four-to-six week period of self-directed physical activity and conditioning. *See id.* at 3452.

21

112. Without any explanation, Dr. Hakimian checked yes.  *See id.*

113. Dr. Hakimian kept the restriction that Plaintiff would require a ten-minute break every hour for stretching and repositioning. However, Dr. Hakimian agreed with Unum that this restriction equated to work at a sedentary level.  *See id.* at 3451-3452.

114. Plaintiff was in physical therapy at the time of Dr. Hakimian's medical examination.  *See id.* at 3558-3566.

115. Physical therapy provided no significant benefit to Plaintiff. *See id.* at 3518, 3654-55.

116. Based on Dr. Hakimian's changed opinion, Unum asked its Legal Department if benefits could be terminated if Plaintiff could work part-time.  *See id.* at 3487.

117. Before the Legal Department could respond, Unum investigated whether the Plan had ever been changed.  *See id.* at 3483.

118. Unum discovered that a change in the Policy occurred on June 1, 2007.  *See id.*

119. On March 20, 2012, Unum's Managing Counsel advised Unum that due to the difference between the pre- and post-June 1, 2007 Plan language, the current Plan does not permit the termination of benefits based upon part-time work capacity, without the claimant's consent.  *See id.* at 3484.

120. In a March 22, 2012 letter, Unum terminated Plaintiff's LTD benefits as of that date.  *See id.* at 3496-3509.

121.  Unum's letter stated:  "Long Term Disability benefit payments have not been approved beyond March 21, 2012, because you no longer meet the contractual definition of disability in accordance with your employer's plan."  *Id.* at 3497.

122.  Unum's stated reason for terminating benefits was: "Based on our review, we have determined that [Plaintiff] will no longer be precluded from performing the duties of your regular occupation after a 4-6 week physical activity and conditioning program.  As such, you do not meet your policy's definition of disability." *Id.* at 3504.

123.  Unum therefore decided that Plaintiff was no longer eligible for benefits and closed her case effective March 22, 2012.  *See id.* at 3504.

124.  Unum's termination letter did not state that benefits were being terminated because Plaintiff was capable of part-time work.  The letter also did not state that Plaintiff had failed to meet the Plan's Evidence of Continuing Disability section. *See id.* at 3496-3509.

**G.  Plaintiff Appeals Unum's Termination of Benefits**

125.  With the assistance of counsel, Plaintiff appealed the termination of benefits.  *See id.* at 3627.

126.  Along with her appeal, Plaintiff provided a Spinal Impairment Questionnaire completed by a nurse at Dr. Martin's office, a Functional Capacity Examination ("FCE") completed by a

23

1  physical therapist, and additional treatment records.  *See id.* at
2  3654-3667, 3634-3653, 3658-3683.

3  127.   The medical records consisted of treatment notes by Dr.
4  Martin on June 9, 2011, January 10, 2012, and March 6, 2012;
5  a trip to a hospital emergency room on March 30, 2012; and
6  physical therapy records from January 30, 2012 to March 15,
7  2012.  *See id.* at 3658-3683.

8  128.   The Spinal Questionnaire was completed by Leah Centanni,
9  FPNC, on July 3, 2012.  Centanni works for Dr. Martin as a
10  pain management nurse.  *See id.* at 3656.

11  129.   The Spinal Impairment Questionnaire confirmed that Plaintiff
12  had weakness due to her lumbar fusion/laminectomy.  *See id.*
13  at 3654.

14  130.   The Spinal Impairment Questionnaire drew the following
15  conclusions: Plaintiff suffers from symptoms of low back
16  pain, sciatica, and pain/numbness down her leg. The pain is
17  constant with 90% in her back and 10% in her leg.  These
18  conditions contribute to cognitive impairment as Plaintiff's
19  mood is poor due to chronic pain.  Plaintiff takes medication
20  for back pain and muscle spasms which causes fatigue.  She
21  was able to sit for up to one hour at a time and stand/walk for
22  less than one hour.  She needed to get up and move around
23  every twenty to thirty minutes.  *See id.* at 3654-3657.

24  131.   The FCE reached similar conclusions.  Plaintiff's
25  recommended physical demands included sitting, standing,

26

27

28

24

and walking occasionally (1-33%) with durations of less than thirty minutes each. *See id.* at 3635-3637.

132. With regard to sitting, the FCE indicated that Plaintiff sat for a total time of 75 minutes and 56 seconds. The longest duration was 22 minutes and 52 seconds. The reason Plaintiff stopped sitting was due to increased pain. *See id.* at 3651.

133. Sitting capacity as reported in the FCE was based on Plaintiff's self-reporting as well as observation during the evaluation. *See id.* at 3639, 3651.

134. The FCE confirmed that: "The client's heart rate rose significantly corresponding with reports of pain during activities." *Id.* at 3637.

135. After receiving Plaintiff's appeal, Unum performed a paper review of the entire file. This began with a roundtable discussion of Plaintiff's case. *See id.* at 3715.

136. The roundtable observed that medical records indicated that Plaintiff went on a hike, participated in amusement park activities, danced on New Year's Eve, and removed carpet for approximately two days. *See id.*

137. The aforementioned activities aggravated Plaintiff's condition and caused her to seek additional treatment. *See id.* at 1711, 2702, 3558-3560.

138. Dr. William Sniger was put in charge of the paper review. *See id.* at 3728-3736.

139. Upon review, Dr. Sniger concluded as follows:

25

> Reasonable restrictions as of 3/21/12 and
> ongoing would consist of the following:
> Lifting/carrying and pushing/pulling up to
> 10# occasionally: Standing/walking
> occasionally; no bending/twisting at the
> waist; sitting frequently with the
> opportunity to change positions; no
> restrictions with reaching, handling,
> fingering or keyboarding. These
> restrictions are predicated upon her history
> of back surgery x3.

*Id.* at 3736.

140.  Other than summarizing the FCE, Dr. Sniger did not address the findings contained therein.  *See id.*

141.  Unum sent Plaintiff's file to Richard Byard, JD, MS, CRC, Senior Vocational Rehabilitation Consultant, for another vocational review.  *See id.* at 3739-41.

142.  Byard stated that Plaintiff's position as an administrative assistant involved sedentary work.  *See id.* at 3740.

143.  Byard continued: "This work usually requires frequent sitting, occasional standing/walking, and the occasional lifting/exertion of force of up to 10 lbs."  *Id.*

144.  Byard noted that "[t]he sitting, standing, and walking requirements of the insured's occupation are all compatible with her stated R&L's [Restrictions and Limitations]."  *Id.*

145.  Byard concluded that the physical demands of Plaintiff's usual occupation could be performed notwithstanding Plaintiff's medically supported R&Ls.  *See id.*

26

146.   Unum upheld the termination of Plaintiff's LTD benefits on November 30, 2012.  *See id.* at 3746-53.

147.   On appeal, Unum again determined that Plaintiff could sit "frequently."  Based on the percentages given by Unum, this equates to somewhere between 2.72 (34%) and 5.28 (66%) hours of sitting in an 8-hour day.  *See id.* at 2430, 3344, 3750.

148.   Under the section entitled "Appeal Decision," Unum wrote: "We have concluded [Plaintiff] is able to perform the duties of her regular occupation.  She no longer meets the definition of disability."  *Id.* at 3747.

149.   Unum found that the following restrictions were medically supported as of March 21, 2012:

- Lifting/carrying and pushing/pulling up to ten pounds occasionally;
- Standing and walking occasionally;
- No bending and twisting at the ` waist;
- Sitting *frequently* with the opportunity to change positions;
- No restrictions with reaching, handling, fingering or keyboarding;
- No working at unprotected heights or with heavy machinery due to her medication therapy.

*Id.* at 3750 (emphasis added).

150.   Under a section entitled "Conclusion," Unum wrote: "Based on our review, the information in [Plaintiff's] claim file

27

supports that she is able to perform the duties of her regular occupation.  The decision to deny benefits on her claim is appropriate."  *Id.* at 3751.

151.   Unum's letter upholding the termination of benefits did not assert that benefits were being terminated because the Plan allowed for benefits to end if Plaintiff was capable of part-time work.  Unum also did not assert that Plaintiff had failed to meet the Plan's Evidence of Continuing Disability section.  *See id.* at 3746-3753.

## III.   CONCLUSIONS OF LAW

### A.   Standard of Review

The beneficiary of an ERISA plan may bring a civil action against a plan administrator "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, and to clarify [her] rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  As such, Plaintiff has standing as a plan beneficiary to bring this action against the plan administrator, Unum, to recover benefits under the Plan.  The parties agree that the standard of review is *de novo*.  This Court will therefore review the administrative record *de novo*.  *See Rorabaugh v. Continental Cas. Co.*, 321 Fed. App'x 708, 709 (9th Cir. 2009) (stating that a court may accept the parties' stipulation to *de novo* review).

28

*De novo* review is the default standard by which a "court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits, without reference to whether the administrator operated under a conflict of interest." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).[3] The court's review is generally limited to the evidence contained in the administrative record. *See Opeta v. Northwest Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007). Under *de novo* review, the plaintiff has the burden of showing that she is entitled to a continuation of benefits according to the terms of the relevant plan. *See Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1296 (9th Cir. 2010). The burden of proof does not shift to the insurer where the insurer terminates benefits (as opposed to denying benefits in the first place). *See, e.g, Ermovick v. Mitchell, Silberberg & Knupp LLP Long Term Disability Coverage for All Emps.*, No. 2:05-cv-06018-JHN-VBKx, 2010 WL 3956819 *6 (C.D. Cal. Oct. 8, 2010) ("The fact that an employer terminates benefits does not shift the burden to the employer."); *Waissman v. Life Ins. Co. of N. Am.*, No. C 08-04731, 2010 WL 329957, at *8 (N.D. Cal. Jan. 20, 2010) (holding that the burden of proof remains with the plaintiff).

In conducting a *de novo* review, the court "considers various circumstances when weighing evidence." *Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program*, 718 F. Supp. 2d 1151, 1162 (N.D. Cal. 2010). For example, in *Saffon v.*

---

[3] Here, Unum is operating under a conflict of interest as it is both the Plan's insurer and claims administrator.

*Wells Fargo & Co. Long Term Disability Plan*, the Ninth Circuit addressed the situation where a claims administrator "had been paying [the claimant] long-term disability benefits for a year, which suggests that she was already disabled." 522 F.3d 863, 871 (9th Cir. 2008).   To find plaintiff no longer disabled in this instance, "one would expect the [evidence] to show an *improvement*, not a lack of degeneration." *Id.* (emphasis in original).   Thus, in reviewing the administrative record, the court "evaluates the persuasiveness of each party's case, which necessarily entails making reasonable inferences where appropriate." *Schramm*, 718 F. Supp. 2d at 1162.

**B.    The Evidence Shows That Plaintiff Remains Disabled**

1.    In 2009, Unum made the determination based on medical evidence that Plaintiff was disabled in that she could not perform sedentary work.  Given that there is no evidence of improvement in Plaintiff's condition, Unum's decision to terminate benefits is therefore untenable. *See Saffon*, 522 F.3d at 871.

2.    Sedentary work requires the ability to sit for at least six hours of an eight-hour workday. *See Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999) ("[T]o be physically able to work the full range of sedentary jobs, the worker must be able to sit through most or all of an eight hour day."); *Connors v. Connecticut Gen. Life Ins. Co.*, 272 F.3d 127, 136 n.5 (2d Cir. 2001) ("According to the Social Security Administration, sedentary work generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work

30

day.") (internal quotation marks, emphasis, and citations omitted).

3.    Unum's finding that Plaintiff was limited to sitting "frequently" -- between 2.72 to 5.28 hours in an 8-hour day -- supports the conclusion that Plaintiff has less than sedentary work capacity.

4.    The FCE showed that Plaintiff was not able to sit, stand, and walk more than "occasionally" in a regular work day (1%-33%) and could do so continuously for less than thirty minutes.

5.    The inability to sit, stand, or walk "occasionally" during a regular work day is not compatible with sedentary work.  *See Gordon v. Northwest Airlines, Inc. Long-Term Disability Income Plan*, 606 F. Supp. 2d 1017, 1037 (D. Minn. 2009) ("Common sense dictates that someone who cannot walk, sit, or stand more than 2.5 hours per day cannot do sedentary work.").

6.    Unum's arguments dismissing the FCE are without medical support.

7.    The conclusion that Plaintiff does not have the capacity to perform sedentary work remains unchanged even if the FCE is disregarded.

8.    Two out of the four doctors that found Plaintiff could do sedentary work are in-house Unum physicians (Drs. Clinton

31

and Sniger).  These doctors did not examine Plaintiff but merely did a paper review of her file.

9.  None of Unum's medical reviewers found any objective evidence (e.g., MRI) of improvement in Plaintiff's condition.

10.  It appears that Dr. Kamran Hakimian is the only doctor who examined Plaintiff in 2012.

11.  Dr. Hakimian's opinion that Plaintiff could work at a sedentary level with ten-minute rest breaks for every hour of work is inconsistent with the realities of the workplace.

12.  Resting for ten minutes, *i.e.*, performing no work,  out of every hour is not a micro-break.  Unum made no showing that this limitation is compatible with normal job duties and requirements.

13.   Moreover, Dr. Hakimian's second opinion that Plaintiff could return to full-time work following a four-to-six week "work hardening program" is entitled to little weight.  A court can appropriately discount the credibility of a second medical report which is revised at the prompting of a claims administrator without new medical evidence.  *See McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 171 (6th Cir. 2003) (discounting doctor's supplemental report that "was significantly different than his initial report without any justification for the change").

14.  Unum must act in accordance with the terms of the Plan.

15. Unum raised the following arguments for the first time during this litigation: 1) Plaintiff failed to satisfy the Plan's "Evidence of Continuing Disability" provision; and 2) the Plan allows for the termination of benefits if Plaintiff is capable of working part-time.

16. The Ninth Circuit frowns upon administrators that rely upon reasons for denying benefits that were not stated prior to the final administrative decision. *See Harlick v. Blue Shield of California*, 686 F.3d 699, 719-20 (9th Cir. 2012) (stating that "a court will not allow an ERISA plan administrator to assert a reason for denial of benefits that it had not given during the administrative process."). *Cf. Abatie*, 458 F.3d at 974 ("When an administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level, the administrator violates ERISA's procedures.").

17. The terms of the Plan do not provide for the termination of benefits based on either part-time or hypothetical future work capacity.

18. Plaintiff's "usual occupation" was a full-time position.

19. Unum cannot consider part-time work in its analysis of "another occupation."

20. Unum violated the Plan's terms by terminating benefits based on hypothetical future work capacity.

21. Unum violated the Plan's terms by terminating benefits based on part-time work capacity.

22. Unum is incorrect that Plaintiff failed to satisfy the Plan's Evidence of Continuing Disability provision by failing to provide evidence of continuing disability beyond 2011. Plaintiff provided records of treatment with Dr. Martin on June 9, 2011, January 10, 2012, and March 6, 2012; a trip to Memorial Care's emergency room on March 30, 2012; and physical therapy records from January 30, 2012 to March 15, 2012.

23. Unum's decision to terminate Plaintiff's LTD benefits on the basis that Plaintiff is no longer disabled was in error and must be overturned.

24. Plaintiff's argument that Unum's benefit calculation was inconsistent with an ordinary interpretation of the Plan's terms is without merit.

25. The Plan provides monthly disability benefits at a rate of 60% of monthly pre-disability earnings. The term "monthly pre-disability earnings" is defined in part as "your gross monthly income from your Employer in effect just prior to your date of disability. . . ."

26. Plaintiff's employer confirmed her hourly rate was $15 and she was scheduled to work forty hours per week. This means that her maximum gross monthly income prior to her date of

1    disability was $2,600 per month [($15 x 40 hours x 52 weeks)

2    / (12 months)].

3    27.   Unum correctly calculated benefits by averaging the income

4          Plaintiff actually received prior to her date of disability which

5          was $2,177.50.

6    28.   The Plan's use of the idiom "in effect" does not alter this

7          conclusion.

8    **C.    Plaintiff's Motion to Introduce Extrinsic Evidence**

9          Plaintiff asks this Court to consider three items of extrinsic evidence: (1)

10   Internet print-outs from the website of Dr. Hakimian which show that he is an anti-

11   aging specialist heavily involved with Botox; (2) medical records documenting

12   Plaintiff's fourth spine surgery; and (3) court filings from the case *Mondolo v.*

13   *Unum* which allegedly show Byard's history of irrational vocational reviews.  None

14   of these documents were submitted to Unum during its administrative review of

15   Plaintiff's claim and, thus, none are part of the Administrative Record.  As

16   explained by the Ninth Circuit:

17

18          A district court, when exercising *de novo* review
            of an ERISA benefits denial decision, may admit
19          additional evidence when circumstances clearly
            establish that additional evidence is necessary to
20          conduct an adequate *de novo* review of the benefit
21          decision.
22

23   *Muniz*, 623 F.3d at 1297 (quotation marks and citations omitted).  This is not one

24   such instance.  The records in issue are irrelevant to the issue of whether Plaintiff

25   was disabled in 2012.  Moreover, the records are simply not needed to conduct an

26

27                                      35

28

adequate review of Unum's termination decision.  Accordingly, Plaintiff's Motion to Introduce Extrinsic Evidence is DENIED.

**IV.    CONCLUSION**

Unum's decision terminating Plaintiff's LTD benefits is overturned. Plaintiff is awarded retroactive benefits as of March 22, 2012, with interest but subject to the offset for Social Security benefits.  Plaintiff's LTD benefits are hereby reinstated going forward.  Plaintiff is granted leave to file a motion for attorneys' fees and costs which may be awarded in the Court's discretion pursuant to 29 U.S.C. § 1132(g)(1) .

**SO ORDERED:**

Dated:  March 25, 2014

JOSEPHINE L. STATON
_____
Honorable Josephine L. Staton
United States District Judge